PEOPLE *v.* MUSTE.

HOMICIDE—INSANITY—INSTRUCTIONS.

Where, on a trial for murder, there is some evidence tending to establish insanity, it is error to refuse a request that, if respondent was laboring under such a defect of mind and reason as not to know the nature and quality of the acts he was doing, and incapable of forming a criminal intent, he should be acquitted, and that it was incumbent upon the people to prove beyond a reasonable doubt that he had the capacity to form an intent to commit the crime.

Error to superior court of Grand Rapids; Newnham, J. Submitted February 26, 1904. (Docket No. 203.) Decided July 16, 1904.

John E. Muste was convicted of murder in the second degree and sentenced to life imprisonment in the State prison at Jackson. Reversed.

*Dunham & Malcolm*, for appellant.

*William B. Brown*, Prosecuting Attorney, for the people.

MOORE, C. J. Respondent was convicted of murder in the second degree. He has brought the case here by writ of error.

On the night of June 8, 1903, the respondent shot and killed one Albert Schultz. It was the claim on the part of the people: That the respondent had been in the saloon business, and in April, 1903, made application to the city council for a renewal of his saloon license. That said application was denied. The application was renewed, and came up for final determination on June 8th, when it was again rejected. Charles A. Hilton was a member of the license committee, which committee reported adversely to the allowance of the applications. That respondent believed the rejection of his first application was due to the influence of said Hilton. That, before respondent's second application was acted upon, he told several persons that, if it was not allowed, he would kill Alderman Hilton, and that he went to the council for the purpose of learning its action thereon; taking with him from his house a loaded revolver, with which to kill Alderman Hilton if this application was refused. It was refused. Respondent followed Alderman Hilton, who was in company with Albert Schultz, from the city hall to near the corner of Bridge and Ionia streets, in said city, where respondent accosted Alderman Hilton, calling him vile names, and finally at-

tacked him, and attempted to pull the revolver from his
pocket.    That Alderman Hilton, seeing this attempt,
caught hold of respondent, and tried to prevent him get-
ting the revolver, and, in the scuffle, that he and the re-
spondent both fell to ground.    That Alderman Hilton got
away from respondent, and started to run, and that re-
spondent fired his revolver, intending to shoot Alderman
Hilton.    That instead, he shot Albert Schultz, who died
from the effect thereof.    That respondent premeditated
and attempted the killing of Alderman Hilton, and, in
such attempt, shot and killed Albert Schultz, and that
such act was murder.

Respondent claims that he had the revolver for a proper
purpose; that in the controversy Hilton struck him and
got on top of him; that Hilton then got up; that respond-
ent was stunned; that it was dark; that he feared another
attack from Alderman Hilton, and that, without any idea
as to what he was doing, took the revolver from his pocket
and fired while on his knees; that the first he remembered
that he had a revolver was when he heard its report; that
as a matter of fact he fired four times, but this he did not
know until he was afterwards told by an official that four
shots had been fired; that his head and face were cut and
bleeding; that blood was running from his nostrils; that
he was so hurt and injured that he was not conscious of
the act of firing, except that he remembered hearing the
report of his pistol; that when he left the house that night
he had no intention of taking the revolver to the council
meeting; that he never threatened to shoot and kill Alder-
man Hilton; that he never blamed him for any action of
his as a member of the license committee; that he was
upon friendly terms with Alderman Hilton; that he did
not at any time intend to inflict any injury upon Alderman
Hilton, and never intended to shoot him; that he had no
intention of shooting Schultz or Alderman Hilton, or of
shooting in the direction of either, or of inflicting upon
either bodily injury of any kind.

He interposed two defenses: *First*, that of temporary

or emotional insanity; and, *second*, that the homicide in question was the result of temporary excitement of respondent, by which the control of his reason was lost, caused by a fierce and vicious attack upon and injury to him by Charles A. Hilton.

The first group of assignments of error relate to the exclusion of testimony. As to many of these, exceptions were not taken; counsel apparently acquiescing in the rulings of the court, and framing other questions, so they were not objectionable. We shall not discuss those assignments of error.

Other of these assignments of error relate to the striking out of testimony bearing upon the subject of insanity. Counsel are not agreed as to what was stricken out, and the record is ambiguous. In view of our conclusion which we shall express later, it is not necessary to decide what was stricken out.

Among other requests, the court was asked to charge the jury as follows:

" "(23) If you find that the respondent on the night of the shooting was laboring under such a defect of mind and reason as not to know the nature and quality of the acts he was doing, and was incapable of forming a criminal intent, he cannot be convicted of the offense charged.

" (24) If, from all the evidence in this case, you are not convinced beyond a reasonable doubt that on the night of the shooting the respondent was of sound mind and discretion, and was capable of forming a criminal intent, you should acquit.

" (25) It is incumbent upon the people to prove beyond a reasonable doubt the criminal intent with which the fatal shot was fired, and the respondent's mental capacity for forming an intent to commit the alleged crime. If, from all the evidence in the case, you cannot say you have a moral certainty that on the night of the shooting the respondent's mind and discretion was sufficient for him to form a rational intent to kill, then respondent's guilt has not been proved to you beyond a reasonable doubt, and you should acquit."

He refused to give these requests, and failed to charge

the jury upon that subject. This is said to be error. Counsel for the people says the requests were properly refused, because there was no testimony upon which to base them. This involves a question of fact. It would not be profitable to insert the testimony here, but an examination of the record discloses that there was some testimony which tended to support the theory of the respondent upon this branch of the case, and it should have been submitted to the jury.

The only portion of the charge which we deem so objectionable as to call for reversal is disposed of in what is said above.

The conviction is set aside, and a new trial ordered.

CARPENTER, MONTGOMERY, and HOOKER, JJ., concurred. GRANT, J., did not sit.